ACCEPTED
01-15-00398-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/5/2015 8:22:56 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00398

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/5/2015 8:22:56 PM
CHRISTOPHER A. PRINE
Clerk

In the court of appeals

For the FIRST JUDICIAL DISTRICT OF TEXAS

JENNIE LARRY JOHNSON
APPELLANT

VS.

FREO TEXAS, LLC
APPLLEE

On Appeal from the County Civil Court at Law No. 3
Ft Bend County, Texas, Trial Court Cause No. 15-CCV-054223

APPENDIX

By: _____

Jennie Larry Johnson, Pro Se
484 Cherokee Court
Keller, TX 76248
Telephone: (832) 524-7667
Telecopier: (281) 962-5934
creativefunding123@gmail.com

| | | |
|---|---|---|
| FREO TEXAS, LLC A DELAWARE LIMITED LIABILITY COMPANY | § § § | IN THE COUNTY CIVIL COURT |
| V. | § § | AT LAW NUMBER THREE (3) |
| JENNIE LARRY JOHNSON and/or All Occupants of 1907 Doliver Circle Missouri City, Texas 77489 | § § § § § | FORT BEND COUNTY, TEXAS |

## FINAL JUDGMENT

On the 27th day of January, 2015, came on to be heard the above-entitled and -numbered cause wherein FREO TEXAS, LLC A DELAWARE LIMITED LIABILITY COMPANY is the Plaintiff, and JENNIE LARRY JOHNSON and/or All Occupants of 1907 Doliver Circle, Missouri City, Fort Bend County, Texas 77489, are the Defendants.

The Plaintiffs appeared by their local counsel William D. Kee, III, Attorney at Law, and announced ready for trial.

~~_____ The Defendant failed to appear; OR~~

✓ The Defendant appeared in person and announced ready for trial; **OR**

~~_____ The Defendant appeared in person~~ and through attorney, _____,

~~and announced ready for trial.~~

The Court finds that notice of trial setting was served on Defendant in accordance with Rule 21a.

Citation was served according to law and returned to the clerk where it remained on file for the time required by law. The Court, having read the pleadings and the papers on file, and having heard the evidence presented, is of the opinion that the allegations of the Plaintiffs' petition are true and that Plaintiff is entitled to a judgment for possession.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED** that Plaintiff, FREO TEXAS, LLC A DELAWARE LIMITED LIABILITY COMPANY, is awarded judgment against Defendants, JENNIE LARRY JOHNSON and/or All Occupants, for possession of the property located at 1907 Doliver Circle, Missouri City, Fort Bend County, Texas 77489, and that a Writ of Possession issue to the proper officer commanding him to seize possession of said premises and deliver same to Plaintiff after said Writ of Possession has been duly filed by Plaintiff if Defendants have not vacated the herein described premises by ___February 15___, 2015.

**IT IS FURTHER ORDERED** that the supersedeas bond is hereby set in the amount of $___10,200.00___ and shall be in the form of cash, cashier's check or corporate surety licensed by and authorized to do business in the State of Texas for such purposes.

All costs of court are hereby taxed against the party by whom incurred, for all of which let execution issue.

Plaintiff is allowed such writs and processes as may be necessary in the enforcement and collection of this judgment.

All relief not expressly granted herein is denied.

Signed this ___28___ day of ___JAN___, 2015.

_____
HONORABLE PRESIDING JUDGE
R. Everett Kennedy

FILED FOR RECORD
NO_____ TIME _____ A.M. / P.M.

JAN 28 2015    VOID

Laura Richard
County Clerk Fort Bend Co. Texas

FILED FOR RECORD
NO_____ TIME _____ A.M. / P.M.

JAN 28 2015    VOID

Laura Richard
County Clerk Fort Bend Co. Texas

66

Prepared By:

WILLIAM D. KEE, III
ATTORNEY AT LAW
TBA #24007470
19855 SOUTHWEST FREEWAY, SUITE 330
SUGAR LAND, TEXAS 77479
TEL: (281) 313-5300
FAX: (281) 313-5305
*Local Counsel for Plaintiff*

FILED FOR RECORD
NO_____ TIME 2:00 A.M. P.M.

JAN 28 2015

County Clerk Fort Bend Co. Texas

67

# ELECTRONIC CODE OF FEDERAL REGULATIONS

## e-CFR data is current as of September 30, 2015

Title 24 → Subtitle B → Chapter II → Subchapter B → Part 203 → Subpart C → §203.675

Title 24: Housing and Urban Development
PART 203—SINGLE FAMILY MORTGAGE INSURANCE
Subpart C—Servicing Responsibilities

§203.675   Notice to occupants of pending acquisition.

(a) At least 60 days, but not more than 90 days, before the date on which the mortgagee reasonably expects to acquire title to the property, the mortgagee shall notify the mortgagor and each head of household who is actually occupying a unit of the property of its potential acquisition by HUD. The mortgagee shall send a copy of this notification to the appropriate HUD Field Office.

(b) The notice shall provide a brief summary of the conditions under which continued occupancy is permissible and advise them that:

(1) Potential acquisition of the property by the Secretary is pending;

(2) The Secretary requires that properties be vacant at the time of conveyance to the Secretary, unless the mortgagor or other occupant can meet the conditions for continued occupany in §203.670, the habitability criteria in §203.673, and the eligibility criteria in §203.674;

(3) An occupant may request permission to remain in occupancy in the event of acquisition of the property by the Secretary by notifying the HUD Field Office in writing, with any required documentation, within 20 days of the date of the mortgagee's notice to the occupant;

(4) If an occupant seeks to qualify for continued occupancy under the illness or injury provisions of §203.674(a), the occupant shall provide to the HUD Field Office, at the time of the occupant's request for permission to remain in occupancy, documentation to support this claim. Documentation shall include an estimate of the time when the patient could be moved without severely aggravating the illness or injury, and a statement by a State-certified physician establishing the validity of the occupant's claim. HUD may require more than one medical opinion or may arrange an examination by a physician approved by HUD; and

(5) If an occupant fails to make a timely request, the property must be vacated before the scheduled time of acquisition.

(Approved by the Office of Management and Budget under control number 2502-0268)

[53 FR 875, Jan. 14, 1988, and 53 FR 8626, Mar. 16, 1988, as amended at 58 FR 54246, Oct. 20, 1993]

Need assistance?

# ELECTRONIC CODE OF FEDERAL REGULATIONS

## e-CFR data is current as of September 30, 2015

Title 24 → Subtitle B → Chapter II → Subchapter B → Part 203 → Subpart C → §203.676

Title 24: Housing and Urban Development
PART 203—SINGLE FAMILY MORTGAGE INSURANCE
Subpart C—Servicing Responsibilities

---

§203.676   Request for continued occupancy.

An occupant may request permission to continue to occupy the property following conveyance to the Secretary by notifying the HUD Field Office in writing, within 20 days after the date of the mortgagee's notice of pending acquisition. Verification of illness or injury as described in §203.675(b)(4) shall be submitted within this time period if an occupant seeks to qualify for continued occupancy under the provisions of §203.674(a). The HUD Field Office will notify the mortgagee in writing that an occupied conveyance has been requested.

(Approved by the Office of Management and Budget under control number 2502-0268)

[53 FR 875, Jan. 14, 1988, and 53 FR 8626, Mar. 16, 1988, as amended at 58 FR 54246, Oct. 20, 1993]

---

Need assistance?

# ELECTRONIC CODE OF FEDERAL REGULATIONS

## e-CFR data is current as of September 30, 2015

Title 24 → Subtitle B → Chapter II → Subchapter B → Part 203 → Subpart C → §203.677

Title 24: Housing and Urban Development
PART 203—SINGLE FAMILY MORTGAGE INSURANCE
Subpart C—Servicing Responsibilities

§203.677   Decision to approve or deny a request.

(a) The HUD Field Office will provide written notification of its decision to an occupant who makes a timely request to continue to occupy the property. The decision of the HUD Field Office on this matter will be made by the Chief, Property Disposition. If the decision is to deny the request, the notice to the occupant will include a statement of the reason or reasons for the decision and of the occupant's right to appeal. The occupant may appeal HUD's decision within 20 days after the date of HUD's notice. The appeal must be addressed to the Field Office Manager and be in writing, and the occupant may provide documentation intended to refute the reasons given for HUD's decision. The occupant may also request an informal conference with a representative of the HUD Field Office Manager. A request for an informal conference must be made in writing within 10 days after the date of HUD's notice. The occupant may be represented at the conference by counsel or by other persons with pertinent expert knowledge or experience.

(b) After notification that HUD has denied a request for continued occupancy, the occupant, on his or her request, shall be permitted to review all relevant material in HUD's possession (including a copy of the inspection report if the request is denied because the property is not habitable as defined in §203.673). Only material in HUD's possession that directly pertains to conditions for continued occupancy under §§203.670, 203.673, and 203.674 may be considered material relevant for an occupant's review under this paragraph. This review shall be limited to a review of material for purposes of the informal conference or the appeal of the Department's decision. The information will only be provided after request for an informal conference or appeal has been submitted to HUD.

(c) After consideration of an appeal, the HUD Field Office will notify the applicant in writing of HUD's final decision. This final decision will be made by the HUD Field Office Manager or a representative of the Field Office Manager (other than the Chief, Property Disposition). If the decision is to deny the occupant's request, the notice to the occupant will reflect consideration of the issues raised by the occupant.

(d) If, after consideration of an appeal, the Field Office Manager denies the request for new or additional reasons, the occupant will be afforded an opportunity to request that the Field Office Manager reconsider its decision under the provisions of paragraph (c) of this section.

[53 FR 875, Jan. 14, 1988, and 53 FR 8626, Mar. 16, 1988]

Need assistance?

# IN THE SUPREME COURT OF TEXAS

Misc. Docket No. 10-**9164**

## APPROVAL OF LOCAL RULES FOR THE COURT OF APPEALS FOR THE FIRST COURT OF APPEALS DISTRICT OF TEXAS

**ORDERED** that:

Pursuant to Texas Rule of Appellate Procedure 1.2, this Court approves the following amendments to the local rules for the Court of Appeals for the First Court of Appeals District of Texas, effective November 1, 2010. To the extent these local rules vary from the standards in Appendix C to the Texas Rules of Appellate Procedure, these local rules control.

SIGNED this 28th day of September, 2010.

_____
Wallace B. Jefferson, Chief Justice

_____
Nathan L. Hecht, Justice

_____
Dale Wainwright, Justice

_____
David M. Medina, Justice

_____
Paul W. Green, Justice

_____
Phil Johnson, Justice

_____
Don R. Willett, Justice

_____
Eva M. Guzman, Justice


_____
Debra H. Lehrmann, Justice

# First Court of Appeals Local Rules

## RULE 1. ASSIGNMENT OF RELATED CASES TO AND TRANSFERS OF RELATED CASES BETWEEN THE FIRST AND FOURTEENTH COURTS OF APPEALS.

### Rule 1.1. Definitions.

(a)     "Underlying case" means a trial court case number that is filed in one of the counties that comprise the jurisdiction of the First and Fourteenth Courts of Appeals and is subsequently the subject of either an appeal or original proceeding in the First or Fourteenth Court of Appeals.

(b)     "Related" means arising from the same underlying case or a case that has been remanded by either the First or Fourteenth Court of Appeals and includes cases severed from the main case.

(c)     "Previously filed" means that a case has been opened at either the First or Fourteenth Court of Appeals and that an appellate case number has been assigned to the underlying case.

### Rule 1.2. Assignment of Original Proceedings to either the First or Fourteenth Court of Appeals.

(a)     Except as noted below, assignment of original proceedings must be alternated between the First and Fourteenth Courts of Appeals.

(b)     During the first six months of a calendar year, relators must first present any original proceeding to the clerk of the First Court of Appeals. During the last six months of a calendar year, relators must first present any original proceeding to the clerk of the Fourteenth Court of Appeals. Hereinafter, the "intake clerk" means the clerk receiving the original proceeding.

(c)     The intake clerk must log in each original proceeding sequentially, assigning original proceedings between the First and Fourteenth Courts of Appeals on an alternating basis.

(d)     If a related appeal or original proceeding has been previously filed in one of the courts, the intake clerk must assign the original proceeding in the manner provided for in Rule 1.3(a)-(b) below.

**Rule 1.3. Notice of and Assignment of Related Cases in Original Proceedings.**

(a)     At the time an original proceeding is filed in either the First or Fourteenth Court of Appeals, the relator must file a notice indicating whether any related appeal or original proceeding has been previously filed in either the First or Fourteenth Court of Appeals. The notice must include the caption, trial court case number, and appellate court case number of the related appeal or original proceeding.

(b)     If any related appeal or original proceeding has been previously filed in or assigned to either the First or Fourteenth Court of Appeals, the clerk of the appellate court receiving the original proceeding must assign it to the court of appeals in which the related appeal or original proceeding was previously filed.

(c)     If related appeals or original proceedings have been filed in both the First and Fourteenth Courts of Appeals, the clerk of the appellate court receiving the original proceeding must assign it to the court of appeals in which the most recent related appeal or original proceeding was previously filed or assigned.

**Rule 1.4. Notice of and Assignment of Related Cases in Appeals.**

(a)     At the time the notice of appeal is filed in the trial court, the notice of appeal must contain a statement indicating whether a related appeal or original proceeding has been previously filed in either the First or Fourteenth Court of Appeals and must include the caption, trial court case number, and appellate court case number of the related appeal or original proceeding.

(b)     If a related appeal or original proceeding has been previously filed in or assigned to either the First or Fourteenth Court of Appeals, the trial court clerk must assign the appeal to the court of appeals in which the related appeal or original proceeding was previously filed, pursuant to TEX. GOV'T CODE ANN. § 22.202(h) (Vernon 2004), which provides for companion cases to be assigned to the same court of appeals.

(c)     If related appeals or original proceedings have been previously filed in both the First and Fourteenth Courts of Appeals, the trial court clerk must assign the appeal to the court of appeals in which the most recent related appeal or original proceeding was previously filed or assigned, pursuant to TEX. GOV'T CODE ANN. § 22.202(h) (Vernon 2004), which provides for companion cases to be assigned to the same court of appeals.

2

**Rule 1.5. Transfers of Related Cases Between the First and Fourteenth Courts of Appeals.**

(a)     The First or Fourteenth Court of Appeals may, either sua sponte or on motion of a party, transfer an appeal or an original proceeding to the other Houston court of appeals when a related appeal or original proceeding has been previously filed.

(b)     The transferring court must forward the case file, together with a transfer order, to the clerk of the transferee court. The clerk of the transferee court must docket the transferred appeal or original proceeding and must assign it a new appellate case number pursuant to TEX. R. APP. P. 12.1 and 12.2.

## RULE 2. CLERK'S RECORD IN CIVIL CASES.

Unless otherwise stated, all references to a rule herein are to the Texas Rules of Appellate Procedure.

## Rule 2.1. Preparation of Clerk's Record.

The trial court clerk must prepare and file the clerk's record in accordance with Rules 34.5 and 35. Even if more than one notice of appeal or request for inclusion of items is filed, the clerk should prepare only one record in a case. To prepare the clerk's record, the trial court clerk must:

(a)     gather the documents required by Rule 34.5(a) and those requested by a party under Rule 34.5(b);

(b)     start each document on a new page;

(c)     include the date of filing on each document;

(d)     arrange the documents in ascending chronological order, by date of filing or occurrence;

(e)     start the page numbering **on the front cover of the first volume** of the clerk's record and **continue to number all pages consecutively** — including the front and back covers, tables of contents, certification page, and separator pages, if any — until the final page of the clerk's record, without regard for the number of volumes in the clerk's record, and place each page number at the bottom of each page;

(f)     prepare, label, and certify the clerk's record as required by this rule;

(g)     as far as practicable, include the date of signing by the judge on each order and judgment;

(h)     include on the front cover of the first volume of the clerk's record, whether filed in paper or electronic form, the following information, in substantially the following form:

# CLERK'S RECORD

VOLUME _____ of _____

Trial Court Cause No. _____

In the _____ (District or County) Court

of _____ County, Texas,

Honorable _____, Judge Presiding

_____, Plaintiff(s)

vs.

_____, Defendant(s)

Appealed to the

(Supreme Court of Texas at Austin, Texas,
or Court of Criminal Appeals of Texas at Austin, Texas,
or Court of Appeals for the _____ District of Texas, at _____, Texas).

Attorney for Appellant(s):

Name

_____

Address

_____

Telephone no.: _____

Fax no.: _____

E-mail address: _____

SBOT no.: _____

Attorney for: _____, Appellant(s)

Name of clerk preparing the clerk's record: _____

4

(i) include on the front cover of the second and subsequent volumes of the clerk's record the same information required under 2.1(h), in substantially the same form;

(j) prepare and include after the front cover of the clerk's record a detailed table of contents identifying each document in the entire record (including sealed documents), the date each document was filed, and, except for sealed documents, the page on which each document begins. The table of contents must be double-spaced and conform to the order in which documents appear in the clerk's record, rather than in alphabetical order. If the clerk's record consists of multiple volumes, the table of contents must indicate the page on which each volume begins. If the clerk's record is filed in electronic form, the clerk **must use bookmarks to link each document description in the table of contents**, except descriptions of sealed documents, to the page on which each document begins; and

(k) conclude the clerk's record with a certificate in substantially the following form:

The State of Texas      )
County of _____   )
I, _____, Clerk of the _____ Court of _____ County, Texas do hereby certify that the documents contained in this record to which this certification is attached are all of the documents specified by Texas Rule of Appellate Procedure 34.5(a) and all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5(b).

GIVEN UNDER MY HAND AND SEAL at my office in _____, County, Texas this ___ day of _____.

     signature of clerk _____
     name of clerk _____
     title _____

If the clerk's record is filed in electronic form, the trial court clerk's login and password serves as the clerk's signature on the certification page. The clerk also must include either a scanned image of the clerk's signature or "/s/" and the clerk's name typed in the space where the signature would otherwise appear.

**Rule 2.2. Filing an Electronic Clerk's Record.**

The First Court of Appeals **prefers** the filing of clerk's records in electronic form. When filing a clerk's record in electronic form, the trial court clerk must:

(a) scan each image in black and white with a resolution of 300 dots per inch (dpi) when filing electronic documents created as scanned images;

(b)     create electronic bookmarks to mark the first page of each document in the clerk's record;

(c)     limit the size of each computer file to 100 MB or less;

(d)     file each computer file in text-searchable Portable Document Format (PDF), compatible with the latest version of Adobe Reader;

(e)     include the following elements in the computer file name, exemplified as FortBend-DC-09-29-CLR-Vol001.pdf:

    (1)     county name without spaces between words;
    (2)     a hyphen;
    (3)     the trial-court cause number, preferably in the format the trial court uses for cause numbers;
    (4)     a hyphen;
    (5)     "CLR-Vol";
    (6)     the volume number as three digits with leading zeroes if needed;
    (7)     a period; and
    (8)     "pdf";

(f)     if there are multiple volumes in a clerk's record, use volume numbers pursuant to 2.2(e)(6) to identify the sequential order of the volumes (e.g., FortBend-DC-09-29-CLR-Vol001.pdf, FortBend-DC-09-29-CLR-Vol002.pdf, etc.);

(g)     if filing a sealed document, include a hyphen, the number of the sealed document, and the term "Sealed" after the term "CLR" in the computer file name (e.g., FortBend-DC-09-29-CLR-1Sealed.pdf, FortBend-DC-09-29-CLR-2Sealed.pdf), and file each sealed document separately from the remainder of the clerk's record;

(h)     if filing a supplement to the clerk's record, include a hyphen, the number of the supplement, the term "Supp," and another hyphen after the term "CLR" in the computer file name (e.g., FortBend-DC-09-29-CLR-1Supp-Vol001.pdf, FortBend-DC-09-29-CLR-2Supp-Vol001.pdf); and

(i)     submit each computer file to the Texas Appeals Management and E-filing System web portal, using the guidelines on the First Court of Appeals' website.

## Rule 2.3. Filing a Paper Clerk's Record.

When filing a paper record, the trial court clerk must:

(a)     bind the documents together in one or more volumes with a top bound, two-inch capacity, two-and-three-quarter-inch, center-to-center removable fastener and no other binding materials, like wax, ribbon, glue, staples, tape, etc.;

(b)     include no more than 500 pages in each volume, or limit the thickness of each volume to a maximum of two inches;

(c)     include only one-sided copies in the clerk's record;

(d)     number the first volume "1" and each succeeding volume sequentially;

6

(e)     if practicable, make a legible copy of the documents on opaque, white, 8½ x 11 inch paper; and

(f)     place each sealed document in a securely sealed, manila envelope that is not bound with the other documents in the clerk's record.

In the event of a material violation of this rule 2 in the preparation of the clerk's record, on motion of a party or on its own initiative, the appellate court may require the trial court clerk to amend the clerk's record or to prepare a new clerk's record in proper form — and provide it to any party who has previously made a copy of the original, defective clerk's record — at the trial clerk's expense. A supplement to a clerk's record must also be prepared in conformity with this rule.

## RULE 3. ELECTRONIC REPORTER'S RECORD IN CIVIL CASES.

(a)     The court reporter or court recorder must prepare and file the reporter's record in accordance with Rules 34.6 and 35 of the Texas Rules of Appellate Procedure and the Uniform Format Manual for Texas Reporters' Records. Even if more than one notice of appeal or request for preparation of the record is filed, the court reporter or court recorder should prepare only one record in the case.

(b)     If proceedings were recorded stenographically, in lieu of filing the reporter's record of the proceedings on paper, the court reporter **must** file the reporter's record in an electronic format via the Texas Appeals Management and E-filing System web portal, in accordance with Section 8 of the Uniform Format Manual for Texas Reporters' Records and the guidelines posted on the First Court of Appeals' website.

(c)     In the event of a material violation of this rule in the preparation of a reporter's record, on motion of a party or on the court's own initiative, the appellate court may require the court reporter or court recorder to amend the reporter's record or to prepare a new reporter's record in proper form — and provide it to any party who has previously made a copy of the original, defective reporter's record — at the reporter's or recorder's expense. A court reporter who fails to comply with the requirements of the Uniform Format Manual for Texas Reporters' Records is also subject to discipline by the Court Reporters Certification Board.

## RULE 4. SUSPENSION OF LOCAL RULES FOR ELECTRONIC FILINGS.

Upon receipt of a motion or on its own initiative, the First Court of Appeals may, to expedite a decision or for other good cause, suspend a local rule pertaining to the filing of electronic records in a particular case and order a different procedure in accordance with the Texas Rules of Appellate Procedure.

limitations period, peaceable and adverse possession does not need to continue in the same person, but there must be privity of estate between each holder and his successor.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 16.024. ADVERSE POSSESSION: THREE-YEAR LIMITATIONS PERIOD. A person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 16.025. ADVERSE POSSESSION: FIVE-YEAR LIMITATIONS PERIOD. (a) A person must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who:
        (1) cultivates, uses, or enjoys the property;
        (2) pays applicable taxes on the property; and
        (3) claims the property under a duly registered deed.
     (b) This section does not apply to a claim based on a forged deed or a deed executed under a forged power of attorney.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 16.026. ADVERSE POSSESSION: 10-YEAR LIMITATIONS PERIOD. (a) A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.
     (b) Without a title instrument, peaceable and adverse possession is limited in this section to 160 acres, including improvements, unless the number of acres actually enclosed exceeds 160. If the number of enclosed acres exceeds 160 acres, peaceable and adverse possession extends to the real property actually enclosed.
     (c) Peaceable possession of real property held under a duly registered deed or other memorandum of title that fixes the boundaries of the possessor's claim extends to the boundaries specified in the

may be, of the person and shall thereupon file with the tribunal the entire record before the ommission.

(9) A tribunal to review the ommission's recommendation for the removal or retirement of a person holding an office or position specified in Subsection (6) of this Section is composed of seven ( ) ustices or udges of the ourts of Appeals who are selected by lot by the hief ustice of the Supreme ourt. Each ourt of Appeals shall designate one of its members for inclusion in the list from which the selection is made. Service on the tribunal shall be considered part of the official duties of a judge, and no additional compensation may be paid for such service. The review tribunal shall review the record of the proceedings on the law and facts and in its discretion may, for good cause shown, permit the introduction of additional evidence. Within 90 days after the date on which the record is filed with the review tribunal, it shall order public censure, retirement or removal, as it finds just and proper, or wholly reject the recommendation. A ustice, udge, Master, or Magistrate may appeal a decision of the review tribunal to the Supreme ourt under the substantial evidence rule. pon an order for involuntary retirement for disability or an order for removal, the office in uestion shall become vacant. The review tribunal, in an order for involuntary retirement for disability or an order for removal, may prohibit such person from holding judicial office in the future. The rights of an incumbent so retired to retirement benefits shall be the same as if his retirement had been voluntary.

(10) All papers filed with and proceedings before the ommission or a Master shall be confidential, unless otherwise provided by law, and the filing of papers with, and the giving of testimony before the ommission or a Master shall be privileged, unless otherwise provided by law. However, the ommission may issue a public statement through its executive director or its hairman at any time during any of its proceedings under this Section when sources other than the ommission cause notoriety concerning a udge or the ommission itself and the ommission determines that the best interests of a udge or of the public will be served by issuing the statement.

(11) The Supreme ourt shall by rule provide for the procedure before the ommission, Masters, review tribunal, and the

Supreme  ourt.  Such rule shall provide the right of discovery of evidence to a  ustice,  udge, Master, or Magistrate after formal proceedings are instituted and shall afford to any person holding an office or position specified in Subsection (6) of this Section, against whom a proceeding is instituted to cause his retirement or removal, due process of law for the procedure before the  ommission, Masters, review tribunal, and the Supreme  ourt in the same manner that any person whose property rights are in jeopardy in an adjudicatory proceeding is entitled to due process of law, regardless of whether or not the interest of the person holding an office or position  specified in Subsection (6) of this Section in remaining in active status is considered to be a right or a privilege.  Due process shall include the right to notice, counsel, hearing, confrontation of his accusers, and all such other incidents of due process as are ordinarily available in proceedings whether or not misfeasance is charged, upon proof of which a penalty may be imposed.

(12)  No person holding an office specified in Subsection (6) of this Section shall sit as a member of the  ommission in any proceeding involving his own suspension, discipline, censure, retirement or removal.

(13)  This Section 1-a is alternative to and cumulative of, the methods of removal of persons holding an office named in Paragraph A of Subsection (6) of this Section provided elsewhere in this  onstitution.

(14)  The Legislature may promulgate laws in furtherance of this Section that are not inconsistent with its provisions.

(Added Nov. 2, 1948; Subsecs. (1)-(13) amended Nov. 2, 1965; Subsecs. (5)-(9) and (11)-(13) amended Nov. 3, 19 0; Subsecs. (2), (5)-(10), and (12) amended Nov. 8, 19  ; Subsecs. (2), (6), and (8)-(12) amended and (14) added Nov. 6, 1984; Subsecs. (1) and (2) amended Nov. 6, 2001; Subsecs. (2) and (5) amended Nov. 8, 2005; Subsec. (1) amended Nov. 6, 200 ; Subsec. (8) amended Nov. 5, 2013.)  (TEMPORARY TRANSITION PROVISIONS for Sec. 1-a: See Appendix, Notes 3 and 5.)

Sec. 2.  S PREME  O RT;   STI ES; SE TIONS; ELI I ILITY; ELE TION; VA AN IES.  (a) The Supreme  ourt shall consist of the  hief  ustice and eight  ustices, any five of whom shall constitute a

THE TE AS  ONSTIT TION

ARTI LE 1.  ILL OF RI HTS

That the general, great and essential principles of liberty and free government may be recogni ed and established, we declare:

Sec. 1.  FREEDOM AND SOVEREI NTY OF STATE.  Texas is a free and independent State, subject only to the  onstitution of the  nited States, and the maintenance of our free institutions and the perpetuity of the  nion depend upon the preservation of the right of local self-government, unimpaired to all the States.


Sec. 2.  INHERENT POLITI AL POWER; REP  LI AN FORM OF  OVERNMENT. All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit.  The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may thin  expedient.


Sec. 3.  E  AL RI HTS.  All free men, when they form a social compact, have e ual rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.


Sec. 3a.  E  ALITY  NDER THE LAW.  E uality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin.  This amendment is self-operative.

(Added Nov.  , 19 2.)


Sec. 4.  RELI IO S TESTS.  No religious test shall ever be re uired as a  ualification to any office, or public trust, in this State; nor shall any one be excluded from holding office on account of his religious sentiments, provided he ac nowledge the existence of a Supreme  eing.

(1)  Time for Request. At any time before the clerk's record is prepared, any party may file with the trial court clerk a written designation specifying items to be included in the record.

(2)  Request Must be Specific. A party requesting that an item be included in the clerk's record must specifically describe the item so that the clerk can readily identify it. The clerk will disregard a general designation, such as one for "all papers filed in the case."

(3)  Requesting Unnecessary Items. In a civil case, if a party requests that more items than necessary be included in the clerk's record or any supplement, the appellate court may — regardless of the appeal's outcome — require that party to pay the costs for the preparation of the unnecessary portion.

(4)  Failure to Timely Request. An appellate court must not refuse to file the clerk's record or a supplemental clerk's record because of a failure to timely request items to be included in the clerk's record.

(c)  *Supplementation*.

(1)  If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may by letter direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item.

(2)  If the appellate court in a criminal case orders the trial court to prepare and file findings of fact and conclusions of law as required by law, or certification of the defendant's right of appeal as required by these rules, the trial court clerk must prepare, certify, and file in the appellate court a supplemental clerk's record containing those findings and conclusions.

(3)  Any supplemental clerk's record will be part of the appellate record.

(d)  *Defects or Inaccuracies*. If the clerk's record is defective or inaccurate, the appellate clerk must inform the trial court clerk of the defect or inaccuracy and instruct the clerk to make the correction.

(e)  *Clerk's Record Lost or Destroyed*. If a filing designated for inclusion in the clerk's record has been lost or destroyed, the parties may, by written stipulation, deliver a copy of that item to the trial

court clerk for inclusion in the clerk's record or a supplement. If the parties cannot agree, the trial court must — on any party's motion or at the appellate court's request — determine what constitutes an accurate copy of the missing item and order it to be included in the clerk's record or a supplement.

(f)  *Original Documents*. If the trial court determines that original documents filed with the trial court clerk should be inspected by the appellate court or sent to that court in lieu of copies, the trial court must make an order for the safekeeping, transportation, and return of those original documents. The order must list the original documents and briefly describe them. All the documents must be arranged in their listed sequence and bound firmly together. On any party's motion or its own initiative, the appellate court may direct the trial court clerk to send it any original document.

(g)  *Additional Copies of Clerk's Record in Criminal Cases*. In a criminal case, the clerk's record must be made in duplicate, and in a case in which the death penalty was assessed, in triplicate. The trial court clerk must retain the copy or copies for the parties to use with the court's permission.

(h)  *Clerk May Consult With Parties*. The clerk may consult with the parties concerning the contents of the clerk's record.

**34.6.  Reporter's Record**

(a)  *Contents*.

(1)  Stenographic Recording. If the proceedings were stenographically recorded, the reporter's record consists of the court reporter's transcription of so much of the proceedings, and any of the exhibits, that the parties to the appeal designate.

(2)  Electronic Recording. If the proceedings were electronically recorded, the reporter's record consists of certified copies of all tapes or other audio-storage devices on which the proceedings were recorded, any of the exhibits that the parties to the appeal designate, and certified copies of the logs prepared by the court recorder under Rule 13.2.

(b)  *Request for preparation*.

(1)  Request to Court Reporter. At or before the time for perfecting the appeal, the appellant must request in writing that the official reporter

prepare the reporter's record. The request must designate the exhibits to be included. A request to the court reporter — but not the court recorder — must also designate the portions of the proceedings to be included.

(2) Filing. The appellant must file a copy of the request with the trial court clerk.

(3) Failure to Timely Request. An appellate court must not refuse to file a reporter's record or a supplemental reporter's record because of a failure to timely request it.

(c) *Partial Reporter's Record.*

(1) Effect on Appellate Points or Issues. If the appellant requests a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues.

(2) Other Parties May Designate Additions. Any other party may designate additional exhibits and portions of the testimony to be included in the reporter's record.

(3) Costs; Requesting Unnecessary Matter. Additions requested by another party must be included in the reporter's record at the appellant's cost. But if the trial court finds that all or part of the designated additions are unnecessary to the appeal, the trial court may order the other party to pay the costs for the preparation of the unnecessary additions. This paragraph does not affect the appellate court's power to tax costs differently.

(4) Presumptions. The appellate court must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues. This presumption applies even if the statement includes a point or issue complaining of the legal or factual insufficiency of the evidence to support a specific factual finding identified in that point or issue.

(5) Criminal Cases. In a criminal case, if the statement contains a point complaining that the evidence is insufficient to support a finding of guilt, the record must include all the evidence admitted at the trial on the issue of guilt or innocence and punishment.

(d) *Supplementation.* If anything relevant is omitted from the reporter's record, the trial court, the appellate court, or any party may by letter direct the official court reporter to prepare, certify, and file in the appellate court a supplemental reporter's record containing the omitted items. Any supplemental reporter's record is part of the appellate record.

(e) *Inaccuracies in the Reporter's Record.*

(1) Correction of Inaccuracies by Agreement. The parties may agree to correct an inaccuracy in the reporter's record, including an exhibit, without the court reporter's recertification.

(2) Correction of Inaccuracies by Trial Court. If the parties cannot agree on whether or how to correct the reporter's record so that the text accurately discloses what occurred in the trial court and the exhibits are accurate, the trial court must – after notice and hearing – settle the dispute. If the court finds any inaccuracy, it must order the court reporter to conform the reporter's record (including text and any exhibits) to what occurred in the trial court, and to file certified corrections in the appellate court.

(3) Correction After Filing in Appellate Court. If the dispute arises after the reporter's record has been filed in the appellate court, that court may submit the dispute to the trial court for resolution. The trial court must then proceed as under subparagraph (e)(2).

(f) *Reporter's Record Lost or Destroyed.* An appellant is entitled to a new trial under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or – if the proceedings were electronically recorded – a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4) if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by

agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.

(g) *Original Exhibits*.

  (1) Reporter May Use in Preparing Reporter's Record. At the court reporter's request, the trial court clerk must give all original exhibits to the reporter for use in preparing the reporter's record. Unless ordered to include original exhibits in the reporter's record, the court reporter must return the original exhibits to the clerk after copying them for inclusion in the reporter's record. If someone other than the trial court clerk possesses an original exhibit, either the trial court or the appellate court may order that person to deliver the exhibit to the trial court clerk.

  (2) Use of Original Exhibits by Appellate Court. If the trial court determines that original exhibits should be inspected by the appellate court or sent to that court in lieu of copies, the trial court must make an order for the safekeeping, transportation, and return of those exhibits. The order must list the exhibits and briefly describe them. To the extent practicable, all the exhibits must be arranged in their listed order and bound firmly together before being sent to the appellate clerk. On any party's motion or its own initiative, the appellate court may direct the trial court clerk to send it any original exhibit.

(h) *Additional Copies of Reporter's Record in Criminal Cases*. In a criminal case in which a party requests a reporter's record, the court reporter must prepare a duplicate of the reporter's record and file it with the trial court clerk. In a case where the death penalty was assessed, the court reporter must prepare two duplicates of the reporter's record.

(i) *Supreme Court and Court of Criminal Appeals May Set Fee*. From time to time, the Supreme Court and the Court of Criminal Appeals may set the fee that the court reporters may charge for preparing the reporter's record.

### Notes and Comments

Comment to 1997 change: Former Rules 50, 51 and 53 are merged. *Clerk's record* is substituted for *transcript*, and *reporter's record* is substituted for *statement of facts* throughout the rules. In subdivision 34.2, the requisites of an agreed record are more clearly stated. Former Rule 50(d), regarding the burden to file a complete record, is repealed. Subdivision 34.4 is from former Rules 51(c) and 53(h). Former Rule 50(f), regarding a violation of the rules, is repealed. Subparagraph 34.5(b)(3) allows the appellate court to tax costs against a party for requiring unnecessary items to be included in the clerk's record. Paragraph 34.5(c) is new and provides for supplementation of the clerk's record. The provisions of paragraph 34.5(d) are from former Rule 55(b). The provisions of paragraph 34.5(e) are from former Rule 50(e). Paragraph 34.5(h) specifically allows the clerk to consult with the parties to determine the contents of the clerk's record. Paragraph 34.6(a), defining the reporter's record, is new. Former Rules 53(b) (Other Requests), (d) (Partial Statement), and (e) (Unnecessary Portions) are merged into paragraph 34.6(c). Paragraph 34.6(d) is new. Paragraph 34.6(e) is from former Rule 55. Paragraph 34.6(f) is from former Rule 50(d). The provisions of former Rules 53(f) (Certification by Court Reporter) and (h) (Form) are moved to the Order of the Supreme Court and the Court of Criminal Appeals on the preparation of the record. Former Rule 53(I) (Narrative Statement) is repealed. The provisions of former Rule 53(j) (Free Statement of Facts) are moved to Rule 20. Former Rule 53(k) (Duty of Appellant to File) is repealed; it is now the duty of the court reporter to file the reporter's record. Paragraph 34.6(g) is from former Rule 51(d). Former Rule 53(g) is now paragraph 34.6(I). Former Rule 53(l) is now paragraph 34.6(h). The need for two duplicate records in a death penalty case was created by the habeas corpus provision in Code of Criminal Procedure article 11.071.

Comment to 2002 change: Rule 34.5(a) is amended to require that the record in a criminal case include the certification of defendant's right of appeal; see Rule 25.2(d). Rule 34.5(c) is amended to make clear that an appellate court may order the trial court to make such a certification for inclusion in a supplemental clerk's record. Subparagraphs 34.6(e) and (f) are amended to clarify the application to exhibits. The language in subparagraph (e)(2) referring to the text of the record is simplified without substantive change. Subparagraph (e)(3) incorporates the procedures specified in (e)(2). The language in subparagraph (f) is clarified to require agreement only as to the portion of the text at issue, and to provide that the trial court may determine that a copy of an exhibit should be used even if the parties cannot agree.

### Rule 35. Time to File Record; Responsibility for Filing Record

**35.1. Civil Cases**

The appellate record must be filed in the appellate court within 60 days after the judgment is signed, except as follows:

(a) if Rule 26.1(a) applies, within 120 days after the judgment is signed;

(b)  if Rule 26.1(b) applies, within 10 days after the notice of appeal is filed; or

(c)  if Rule 26.1(c) applies, within 30 days after the notice of appeal is filed.

## 35.2.  Criminal Cases

The  appellate record must be filed in the appellate court:

(a)  if a motion for new trial is not filed, within 60 days after the date the sentence is imposed or suspended in open court or the order appealed from is signed;

(b)  if a timely motion for new trial is filed and denied, within 120 days after the date the sentence is imposed or suspended in open court; or

(c)  if a motion for new trial is granted, within 60 days after the order granting the motion is signed.

## 35.3.  Responsibility for Filing Record

(a)  *Clerk's Record*. The trial court clerk is responsible for preparing, certifying, and timely filing the clerk's record if:

(1)  a notice of appeal has been filed, and in criminal proceedings, the trial court has certified the defendant's right of appeal, as required by Rule 25.2(d); and

(2)  the party responsible for paying for the preparation of the clerk's record has paid the clerk's fee, has made satisfactory arrangements with the clerk to pay the fee, or is entitled to appeal without paying the fee.

(b)  *Reporter's Record*. The official or deputy reporter is responsible for preparing, certifying, and timely filing the reporter's record if:

(1)  a notice of appeal has been filed;

(2)  the appellant has requested that the reporter's record be prepared; and

(3)  the party responsible for paying for the preparation of the reporter's record has paid the reporter's fee, or has made satisfactory arrangements with the reporter to pay the fee, or is entitled to appeal without paying the fee.

(c)  *Courts to Ensure Record Timely Filed*. The trial and appellate courts are jointly responsible for ensuring that the appellate record is timely filed. The appellate court may extend the deadline to file the record if

requested by the clerk or reporter.  Each extension must not exceed 30 days in an ordinary or restricted appeal, or 10 days in an accelerated appeal. The appellate court must allow the record to be filed late when the delay is not the appellant's fault, and may do so when the delay is the appellant's fault. The appellate court may enter any order necessary to ensure the timely filing of the appellate record.

### Notes and Comments

Comment to 1997 change: This is former Rule 54. In subdivision 35.1, the time to file the record in civil cases is based on the date the judgment is signed except in accelerated and restricted appeals, in which the time to file the record is based on the date the notice of appeal is filed.  Subdivision 35.3 is new and makes it the responsibility of the trial court clerk and court reporter to file the record.  Former Rule 54(c), providing for an extension of time to file the record, is repealed as unnecessary. The trial court clerk and court reporter should make arrangements with the court of appeals if additional time is required to file the record, as suggested in Rule 37.3

## Rule 36.  Agency Record in Administrative Appeals

### 36.1.  Scope

This rule applies only to cases involving judicial review of state agency decisions in contested cases under the Administrative Procedure Act.

### 36.2.  Inclusion in Appellate Record

The record of an agency proceeding filed in the trial court may be included in either the clerk's record or the reporter's record.

### 36.3.  Correcting the Record

(a)  *Correction by Agreement*. At any stage of the proceeding, the parties may agree to correct an agency record filed under Section 2001.175(b) of the Government Code to ensure that the agency record accurately reflects the contested case proceedings before the agency. The court reporter need not recertify the agency record.

(b)  *Correction by Trial Court*. If the parties cannot agree to a correction to the agency record, the appellate court must — on any party's motion or its own incentive — send the question to the trial court. After notice and hearing, the trial court must determine what constitutes an accurate copy of the agency record and order the agency to send an

judgment creditor. In subdivision 24.2, the provisions for determining the amount of the bond or deposit are simplified. All provisions regarding superseding a judgment for an interest in property are merged into subparagraph 24.2(a)(2) The procedure for allowing security in a lesser amount is moved to paragraph 24.2(b) and is made applicable to all judgments. Subdivision 24.4 is taken from former Rule 49. The procedure for appellate review is more precisely stated.

Comment to 2008 change: Subdivision 24.2(c) is amended to clarify the procedure in determining net worth. A debtor's affidavit of net worth must be detailed, but the clerk must file what is tendered without determining whether it complies with the rule. If the trial court orders that additional or other security be given, the debtor is afforded time to comply. Subdivision 24.4(a) is revised to clarify that a party seeking relief from a supersedeas ruling should file a motion in the court of appeals that has or presumably will have jurisdiction of the appeal. After the court of appeals has ruled, a party may seek review by filing a petition for writ of mandamus in the Supreme Court. *See In re Smith / In re Main Place Custom Homes, Inc.*, 192 S.W.3d 564, 568 (Tex. 2006) (per curiam).

## Rule 25. Perfecting Appeal

### 25.1. Civil Cases

(a) *Notice of Appeal*. An appeal is perfected when a written notice of appeal is filed with the trial court clerk. If a notice of appeal is mistakenly filed with the appellate court, the notice is deemed to have been filed the same day with the trial court clerk, and the appellate clerk must immediately send the trial court clerk a copy of the notice.

(b) *Jurisdiction of Appellate Court*. The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from. Any party's failure to take any other step required by these rules, including the failure of another party to perfect an appeal under (c), does not deprive the appellate court of jurisdiction but is ground only for the appellate court to act appropriately, including dismissing the appeal.

(c) *Who Must File Notice*. A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. Parties whose interests are aligned may file a joint notice of appeal. The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause.

(d) *Contents of Notice*. The notice of appeal must:

(1) identify the trial court and state the case's trial court number and style;

(2) state the date of the judgment or order appealed from;

(3) state that the party desires to appeal;

(4) state the court to which the appeal is taken unless the appeal is to either the First or Fourteenth Court of Appeals, in which case the notice must state that the appeal is to either of those courts;

(5) state the name of each party filing the notice;

(6) in an accelerated appeal, state that the appeal is accelerated and state whether it is a parental termination or child protection case, as defined in Rule 28.4;

(7) in a restricted appeal:

(A) state that the appellant is a party affected by the trial court's judgment but did not participate — either in person or through counsel — in the hearing that resulted in the judgment complained of;

(B) state that the appellant did not timely file either a postjudgment motion, request for findings of fact and conclusions of law, or notice of appeal; and

(C) be verified by the appellant if the appellant does not have counsel.

(8) state, if applicable, that the appellant is presumed indigent and may proceed without advance payment of costs as provided in Rule 20.1(a)(3).

(e) *Service of Notice.* The notice of appeal must be served on all parties to the trial court's final judgment or, in an interlocutory appeal, on all parties to the trial court proceeding.

(f) *Clerk's Duties*. The trial court clerk must immediately send a copy of the notice of appeal to the appellate court clerk and to the court reporter or court reporters responsible for preparing the reporter's record.

(g) *Amending the Notice*. An amended notice of appeal correcting a defect or omission in an earlier filed notice may be filed in the appellate court at any time before the appellant's brief is filed. The amended

(c)  reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered;

(d)  reverse the trial court's judgment and remand the case for further proceedings;

(e)  vacate the trial court's judgment and dismiss the case; or

(f)  dismiss the appeal.

## 43.3. Rendition Appropriate Unless Remand Necessary

When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when:

(a)  a remand is necessary for further proceedings; or

(b)  the interests of justice require a remand for another trial.

## 43.4. Judgment for Costs in Civil Cases

In a civil case, the court of appeals' judgment should award to the prevailing party the appellate costs — including preparation costs for the clerk's record and the reporter's record — that were incurred by that party. But the court of appeals may tax costs otherwise as required by law or for good cause.

## 43.5. Judgment Against Sureties in Civil Cases

When a court of appeals affirms the trial court judgment, or modifies that judgment and renders judgment against the appellant, the court of appeals must render judgment against the sureties on the appellant's supersedeas bond, if any, for the performance of the judgment and for any costs taxed against the appellant.

## 43.6. Other Orders

The court of appeals may make any other appropriate order that the law and the nature of the case require.

### Notes and Comments

Comment to 1997 changes: Former Rules 80(a) - (c) and 82 are merged. Paragraph 43.2(e) allows the court of appeals to vacate the trial court's judgment and dismiss the case; paragraph 43.2(f) allows the court of appeals to dismiss the appeal. Both provisions are new but codify current practice. Paragraph 43.3(a) is moved here from former Rule 81(c). Paragraph 43.3(b), allowing a remand in the interest of justice, is new. Subdivisions 43.4 and 43.5 are from former Rule 82.

## Rule 44. Reversible Error

### 44.1. Reversible Error in Civil Cases

(a)  *Standard for Reversible Error.* No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

(1)  probably caused the rendition of an improper judgment; or

(2)  probably prevented the appellant from properly presenting the case to the court of appeals.

(b)  *Error Affecting Only Part of Case.* If the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error. The court may not order a separate trial solely on unliquidated damages if liability is contested.

### 44.2. Reversible Error in Criminal Cases

(a)  *Constitutional Error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b)  *Other Errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

(c)  *Presumptions.* Unless the following matters were disputed in the trial court, or unless the record affirmatively shows the contrary, the court of appeals must presume:

(1)  that venue was proved in the trial court;

(2)  that the jury was properly impaneled and sworn;

(3)  that the defendant was arraigned;

(4)  that the defendant pleaded to the indictment or other charging instrument; and

(5)  that the court's charge was certified by the trial court and filed by the clerk before it was read to the jury.

### 44.3. Defects in Procedure



# ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)

NOTICE:  Not For Use For Condominium Transactions

**1. PARTIES:**  The parties to this contract are _____ (Seller) and _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements and accessories are collectively referred to as the "Property".

  A.  LAND: Lot _____ Block _____, _____ Addition, City of _____ , County of _____ , Texas, known as _____ (address/zip code), or as described on attached exhibit.

  B.  IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items,** if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.

  C.  ACCESSORIES:  The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for:  (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories.

  D.  EXCLUSIONS: The following improvements and accessories will  be  retained  by  Seller  and must be removed prior to delivery of possession: _____ _____ .

**3. SALES PRICE:**

  A. Cash portion of Sales Price payable by Buyer at closing ............................ $_____

  B. Sum of all financing described below (excluding any loan funding

    fee or mortgage insurance premium) ...................................................... $_____

  C. Sales Price (Sum of A and B)................................................................ $_____

**4. FINANCING (Not for use with reverse mortgage financing):** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)

❑ A.THIRD PARTY FINANCING: One  or  more  third  party  mortgage  loans  in  the  total  amount  of $_____ (excluding any loan funding fee or mortgage insurance premium).

  (1)  Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s) (including, but not limited to appraisal, insurability and lender required repairs), Buyer may terminate this contract by giving notice to Seller prior to closing and the earnest money will be refunded to Buyer.

  (2)  Credit Approval: (Check one box only)

    ❑  (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Addendum for Credit Approval.

    ❑  (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.

❑ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.

❑ C. SELLER FINANCING:  A promissory note from Buyer to Seller of $_____ , secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

**5. EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit $_____ as earnest money with _____, as escrow agent, at _____ (address). Buyer shall deposit additional earnest money of $_____ with escrow agent within _____ days after the effective date of this contract.  If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**

A. TITLE POLICY: Seller shall furnish to Buyer at ❑ Seller's ❑ Buyer's expense an owner policy of title insurance (Title Policy) issued by _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

(1) Restrictive covenants common to the platted subdivision in which the Property is located.

(2) The standard printed exception for standby fees, taxes and assessments.

(3) Liens created as part of the financing described in Paragraph 4.

(4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.

(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

(6) The standard printed exception as to marital rights.

(7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

(8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements: ❑(i) will not be amended or deleted from the title policy; ❑(ii) will be amended to read, "shortages in area" at the expense of ❑Buyer ❑Seller.

B. COMMITMENT:  Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions.  Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If, due to factors beyond Seller's control, the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. SURVEY:  The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)

❑(1) Within _____ days after the effective date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title  Company or Buyer's lender(s), Buyer shall obtain a new survey at ❑Seller's ❑Buyer's expense no later than 3 days prior to Closing Date.

❑(2) Within _____ days after the effective date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

❑(3) Within _____ days after the effective date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (8) above; or which prohibit the following use or activity: _____
_____.
Buyer must object the earlier of (i) the Closing Date or (ii) _____ days after  Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer.  Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender

within 15 days after Seller receives the objections and the Closing Date will be extended as necessary.  If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E.  TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy.  If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ❑is ❑is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.** Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association.  A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association.  These documents must be made available to you by the property owners' association or the association's agent on your request. **If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS:  If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract.  An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER:  Notice required by §13.257, Water Code:  The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service.  There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local  Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows:  The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA:  If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code.  An addendum containing the notice approved by TREC or required by the parties should be used.

**7.  PROPERTY CONDITION:**
A. ACCESS, INSPECTIONS AND UTILITIES:  Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):
(Check one box only)
❑ (1) Buyer has received the Notice.
❑ (2) Buyer has not received the Notice.  Within _____ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
❑ (3)The Seller is not required to furnish the notice under the Texas Property Code.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to  1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)
❑ (1) Buyer accepts the Property As Is.
❑ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____
_____.
(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer.  If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS:  Unless otherwise agreed in writing:  (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments.  At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the

Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

   H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**

   A. The closing of the sale will be on or before _____, 20_____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date).  If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

   B. At closing:

     (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.

     (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.

     (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.

     (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

     (5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has received the security deposit and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. **POSSESSION:**

   A Buyer's Possession:  Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ❑upon closing and funding ❑according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior  to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

   B. Leases:

     (1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.

     (2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

11. **SPECIAL PROVISIONS:**  (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

12. **SETTLEMENT AND OTHER EXPENSES:**

   A. The following expenses must be paid at or prior to closing:

     (1) Expenses payable by Seller (Seller's Expenses):

       (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

       (b) Seller shall also pay an amount not to exceed $_____ to be applied in the

following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; adjusted origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

13. **PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

14. **CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

18. **ESCROW:**
A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of

the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

   D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

   E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

**To Buyer at:** _____    **To Seller at:** _____

_____                      _____

Telephone: ( ) _____    Telephone: ( ) _____
Facsimile: ( ) _____    Facsimile: ( ) _____
E-mail: _____    E-mail: _____

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

❑ Third Party Financing Addendum for Credit Approval

❑ Seller Financing Addendum

❑ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

❑ Buyer's Temporary Residential Lease

❑ Loan Assumption Addendum

❑ Addendum for Sale of Other Property by Buyer

❑ Addendum for Reservation of Oil, Gas and Other Minerals

❑ Addendum for "Back-Up" Contract

❑ Addendum for Coastal Area Property

❑ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

❑ Seller's Temporary Residential Lease

❑ Short Sale Addendum

❑ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

❑ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

❑ Addendum for Property in a Propane Gas System Service Area

❑ Other (list): _____

_____

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $_____ (Option Fee) within 3 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the effective date of this contract (Option Period). If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ❑will ❑will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate licensees from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is: _____

Seller's
Attorney is: _____

_____

_____

Telephone: (___) _____

Telephone: (___) _____

Facsimile: (___) _____

Facsimile: (___) _____

E-mail: _____

E-mail: _____

**EXECUTED the _____ day of _____, 20_____ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

_____
Buyer

_____
Seller

_____
Buyer

_____
Seller

The form of this contract has been approved by the Texas Real Estate Commission.   TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-12. This form replaces TREC NO. 20-11.

TREC NO. 20-12

## BROKER   INFORMATION
(Print name(s) only. Do not sign)

| Other Broker Firm | License No. |
|---|---|

represents ☐ Buyer only as Buyer's agent
☐ Seller as Listing Broker's subagent

| Name of Associate's Licensed Supervisor | Telephone |
|---|---|

| Associate's Name | Telephone |
|---|---|

| Other Broker's Address | Facsimile |
|---|---|

| City | State | Zip |
|---|---|---|

Associate's Email Address

| Listing Broker Firm | License No. |
|---|---|

represents ☐ Seller and Buyer as an intermediary
☐ Seller only as Seller's agent

| Name of Associate's Licensed Supervisor | Telephone |
|---|---|

| Listing Associate's Name | Telephone |
|---|---|

| Listing Broker's Office Address | Facsimile |
|---|---|

| City | State | Zip |
|---|---|---|

Listing Associate's Email Address

| Selling Associate's Name | Telephone |
|---|---|

| Name of Selling Associate's Licensed Supervisor | Telephone |
|---|---|

| Selling Associate's Office Address | Facsimile |
|---|---|

| City | State | Zip |
|---|---|---|

Selling Associate's Email Address

Listing Broker has agreed to pay Other Broker_____of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay other Broker from Listing Broker's fee at closing.

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____ is acknowledged.

_____          _____
Seller or Listing Broker                                      Date

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of ☐Contract and ☐$_____Earnest Money in the form of _____
is acknowledged.

Escrow Agent: _____          Date: _____

By: _____

_____
Address                                                                        Email Address

Telephone (____)_____

_____
City                         State                         Zip                    Facsimile: (___) _____

TREC NO. 20-12